UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **CHARVELLE CARTER** | **2:21-CV-10856-TGB** |
| Plaintiff, | **CONSOLIDATED ORDER** |
| | **GRANTING DEFENDANT TROY POLICE OFFICERS' MOTION TO DISMISS** |
| vs. | **GRANTING IN PART, DENYING IN PART DEFENDANTS LOUIS VUITTON NORTH AMERICA, INC., AND TATIANA VITOSEVIC'S MOTION TO DISMISS, AND** |
| **TROY POLICE OFFICER SHEARER,** and **TROY POLICE OFFICER MINTON,** in their individual capacities, and **LOUIS VUITTON NORTH AMERICA, INC.,** and **TATIANA VITOSEVIC, LEAH BARRAGER** jointly and severally, | |
| Defendants. | **GRANTING PLAINTIFF'S MOTION TO AMEND COMPLAINT** |

Charvelle Carter, an African-American woman, was shopping at the Louis Vuitton store located at the Somerset Mall in Troy, Michigan, when she attempted to make a $2,500 purchase. When the transaction was not approved, according to the store clerks, their computer system reported that Ms. Carter's debit[1] card was stolen. The Troy Police were quickly summoned, and Ms. Carter was detained for a short period as

---

[1] Plaintiff uses "debit" and "credit" card interchangeably. For the sake of consistency, this Court will refer to Plaintiff's card as a debit card.

they tried to sort it out.  Eventually, Ms. Carter was allowed to go, but the police retained her debit card for further investigation.

Now the Plaintiff in this case, Ms. Carter, brings this action against Defendants Troy Police Officers Shearer and Minton ("Defendant officers"), Defendant Louis Vuitton North America Inc. ("LVNA"), and Defendants Tatiana Vitosevic and Leah Barrager, LVNA's employees, alleging a Fourth and Fourteenth Amendment violation against Defendant officers, a false arrest claim in violation of MCL §600.2907 against all Defendants, and the denial of equal public accommodations in violation of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 et seq., and MCL 750.146, against Defendants LVNA, Vitosevic, and Barrager. In separate motions, Defendant officers and Defendants LVNA and Vitosevic move to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). ECF No. 13; ECF No. 23.  For the reasons that follow, Defendant officers' Motion to Dismiss is **GRANTED** and Defendants LVNA and Vitosevic's Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART.**

## I.   BACKGROUND

On April 6, 2021, Ms. Carter attempted to make a $2,500 purchase at Defendant LVNA's store at the Somerset Mall in Troy, Michigan. ECF No.19-1, PageID.162. Defendant LVNA is a high-end luxury fashion house that retails high quality purses, luggage, leather goods, clothing,

2

and other accessories.[2] Due to prior issues with Plaintiff's Mastercard debit card, Plaintiff claims she called her bank before attempting to make her purchase but was placed on hold. *Id*. at PageID.162-63. While on hold, Plaintiff alleges she used her phone to check her bank account status and found that while she had sufficient funds in her account, there was an outstanding overdraft fee. *Id*. at PageID.163.

After paying the required minimum overdraft fee, Plaintiff alleges that she approached Defendant Vitosevic, a white sales associate of Defendant LVNA, to make her purchase and her debit card was declined. *Id*. While remaining on hold with her bank, Plaintiff alleges that she paid the balance of the overdraft fee on the assumption that was the reason her card was declined. *Id*. However, when Plaintiff requested Defendant Vitosevic charge the debit card again, the card was declined a second time. *Id*. Plaintiff alleges that when the card was again declined, the Defendant's Point-of-Sale ("POS") computer screen only indicated that the card was declined, not stolen.[3] *Id*. at PageID.164.

Plaintiff alleges that after her card was declined, Plaintiff remained in Defendant LVNA's store and sat down while on hold with her bank.

_____

[2] This information is omitted from the record and the Court has added these details from *Louis Vuitton North America, Inc., v. Schenker S.A.*, 2019 WL 1507792, *1 (E.D. N.Y. 2019).

[3] Defendant LVNA disputes this fact, claiming that Defendant's POS computer indicated the card was stolen. ECF No. 23, PageID.265. On a motion to dismiss, this Court accepts Plaintiff's version of the facts.

*Id*. During this time, Plaintiff alleges that Defendant Vitosevic, or possibly her supervisor Defendant Barrager, called Troy Police and/or Somerset Mall security and falsely reported that Plaintiff attempted to make a purchase with a stolen debit card. *Id*. Shortly thereafter, a Somerset security guard, entered the store and approached Defendant Vitosevic to discuss the situation, followed by two white Troy Police officers, Defendant Officers Shearer and Minton. *Id*. at PageID.165.

Plaintiff alleges that upon entering the store, the officers immediately approached her and accused her of using a stolen debit card. *Id*. Plaintiff contends that during this time she contacted her bank to inform a representative that her debit card had been reported as stolen. *Id*. Plaintiff claims the bank representative stated she would check into the status of her debit card and placed her on hold. *Id*.

In her discussions with the Defendant officers, Plaintiff alleges that the debit card belonged to her, had her name on it, and was not stolen. *Id*. When the Defendant officers demanded identification, Plaintiff complied and produced her current, valid driver's license with her picture on it. *Id*. At this point, Plaintiff claims she stated that she no longer wished to purchase anything and wanted to leave the store. But the Defendant officers told her she was not free to go. One of the officers "forcefully" grabbed Plaintiff's driver's license out of her hand and demanded to see her debit card, before taking both items to the back of the store. *Id*. at PageID.166. When the police officer returned, defendant

4

officers told Plaintiff she was being detained because Defendant Vitosevic reported that Plaintiff's debit card came up as stolen in Defendant LVNA's POS computer system. *Id.*

Shortly thereafter, Plaintiff claims that despite her insistence that she was on a call with her bank, the police "forcefully" grabbed her phone from her hand and ended the call. *Id.* One of the Defendant officers then informed Plaintiff that he had run her debit card and that while the card chip matched the card number, there was "no name attached to the card." *Id.* at PageID.167. Eventually, the Defendant officers allowed Plaintiff to leave but not before confiscating her debit card and leaving the store with it. *Id.*at PageID.168. Plaintiff alleges Defendant officers detained her for approximately 43 minutes. *Id.* The record indicates Plaintiff's card was not released to her until June 21, 2021. ECF No. 21-3, PageID.202.

In the Complaint, Plaintiff alleges Defendant officers arrested her without probable cause in violation of the Fourth and Fourteenth Amendment and falsely arrested her in violation of MCL §600.2907. She also brings an action against Defendants LVNA, Vitosevic, and Barrager for instigating a false arrest in violation of MCL §600.2907, and discriminating against her in violation of Michigan's ELCRA, MCL 37.2101 et seq., and MCL 750.146. Defendant Officers Shearer and Minton, and Defendants LVNA and Vitosevic, filed separate motions to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for Plaintiff's failure to state a claim upon which relief can be granted.[4]

As a preliminary matter, the Court has original jurisdiction over Plaintiff's constitutional claim actionable under § 1983. 28 U.S.C. § 1331. Because Plaintiff's state law claims against Defendants LVNA, Vitosevic, and Barrager arise out of the same incident and share a common nucleus of operative fact, the Court also will exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367.

## II.   LEAVE TO AMEND

Plaintiff has asked this Court for leave to amend her Complaint. ECF Nos. 19, 19-1. Rule 15(a) of Fed. R. Civ. P provides that leave to amend complaints shall be freely granted "when justice so requires." *Sanders v. Michigan Supreme Court,* 329 F.R.D. 174, 176 (E.D. Mich. 2019) (citing to *Forman v. Davis*, 371 U.S. 178, 181 (1962)). Leave is inappropriate when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party by virtue of the allowance of amendment." *Id.*

Plaintiff requested leave to amend within 34 days of receiving Defendant officers' Motion to Dismiss. After careful review, the Court

---

[4] Plaintiff recently added Defendant Barrager to this action. Accordingly, Barrager has not had an opportunity to answer or file a dispositive motion in response to Plaintiff's allegations.

believes in the interest of justice it is appropriate to grant Plaintiff's request to amend the Complaint, particularly with respect to the identification of party defendants Officer Minton and Tatiana Vitosevic; the addition of a new named defendant, Leah Barrager; and the inclusion of the 43-minute detention.

### III.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal of a lawsuit where the defendant establishes the plaintiff's "failure to state a claim upon which relief can be granted." *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Consideration of a Rule 12(b)(6) motion is confined to the pleadings. *Id.* In evaluating the motion, courts "must construe the complaint in the light most favorable to the plaintiff, accept all well-pled factual allegations as true and determine whether the plaintiff undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (citing *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006)). Though this standard is liberal, it requires a plaintiff to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in support of her grounds for entitlement to relief. *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). Under *Ashcroft v. Iqbal*, the plaintiff

must also plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff falls short if she pleads facts "merely consistent with a defendant's liability" or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct." *Albrecht*, 617 F.3d at 893 (quoting *Iqbal*, 556 U.S. at 678–679).

## IV.   ANALYSIS

Plaintiff alleges three separate causes of action in her Complaint:

1. Defendant Officers Shearer and Minton violated her Fourth and Fourteenth Amendment right to be free from unreasonable search and seizure (Count I).
2. All Defendants' conduct constitutes a common law false arrest in violation of Michigan law, MCL §600.2907 (Count II).
3. Defendants LVNA, Vitosevic, and Barrager, racially discriminated against her in violation of Michigan's ELCRA (Count III).

The Court will address each of Plaintiff's claims in turn.

## A. Unreasonable Search and Seizure (Count I)

Defendant officers correctly note that Plaintiff has failed to cite to § 1983, which is the exclusive remedy for an individual's right to sue Defendant officers in their individual capacity under color of state law for constitutional violations. *See Foster v. Michigan,* 573 F. App'x 377, 391 (6th Cir. 2014). However, in the interest of justice, the Court will read Plaintiff's Complaint as amended to state a claim under § 1983. For the reasons explained below, the Court finds that Plaintiffs' constitutional

claims would fail on their merits even if Plaintiff had properly raised them under 42 U.S.C. § 1983.

The Fourth Amendment requires that all "searches and seizures" be based upon probable cause. *United States v. Garza*, 10 F.3d 1241, 1245 (6th Cir. 1993). "There are, however, certain narrowly drawn exceptions to the probable cause requirement," such as the *Terry* stop, which allows a police officer to approach and temporarily detain a person for the purpose of investigating possible criminal behavior without probable cause. *Id.* (internal quotations and citations omitted); *See Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 622 (6th Cir. 2021).

Despite Plaintiff's allegation that she was arrested without probable cause in violation of the Fourth and Fourteenth Amendment, Defendant officers deny that Plaintiff was ever arrested, and instead argue that she was temporarily detained in a permissible *Terry* stop investigation based upon reasonable suspicion. Because "[t]he ultimate determinations as to the legality of the stop" or "the existence of probable cause to search the vehicle are conclusions of law," the Court need only determine at the motion to dismiss stage whether Plaintiff's Complaint adequately pleads facts that indicate she was arrested. *Garza*, 10 F.3d at 1245. If the facts do not allow the Court to reasonably infer Plaintiff was arrested, then her claim for unreasonable search and seizure against Defendant officers must be dismissed.

"The question of whether an investigative stop crosses the line and becomes an arrest has spawned much judicial discussion . . ." *United States v. Hardnett*, 804 F.2d 353, 356 (6th Cir. 1986). Although the Sixth Circuit has made clear that "formal words of arrest or booking at a police station" are not necessary for an individual to be considered under arrest, the Supreme Court has avoided establishing a per se rule for when the investigatory detainment of a person ripens into an arrest. (*United States v. Richardson*, 949 F.2d 851, 856 (6th Cir. 1991) (internal citations and quotations omitted. "Rather, a seizure may be considered an arrest, and probable cause for the seizure may be required, when a detention is 'in important respects indistinguishable from a traditional arrest.'" *Hardnett*, 804 F.2d at 356 (quoting *Dunaway v. New York,* 442 U.S. 200, 212 (1979)). But due to the "'endless variations in the facts and circumstances,'" we lack the luxury of a "'litmus-paper test for determining when a seizure exceeds the bounds of an investigative stop'" and becomes an arrest. *Id.* (quoting *Florida v. Royer,* 460 U.S. 491, 506 (1983)).

Therefore, "resolving the question of whether a seizure is an investigative stop, rather than an arrest, generally depends on the reasonableness of the stop under the circumstances." *Id*. The reasonableness is determined by examining two factors:

(1) whether there was a proper basis for the stop, which is judged by examining whether the law enforcement officials were

aware of specific and articulable facts which gave rise to a reasonable suspicion; and

(2) whether the degree of intrusion into the suspect's personal security was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances.

*Id.; Terry,* 392 U.S. at 19–20; *see also United States v. Powell*, 210 F.3d 373 (6th Cir. 2000); *United States v. Palomino,* 100 F.3d 446, 449 (6th Cir.1996).

### i.   Officers investigated upon reasonable suspicion.

With regard to the first inquiry, we find that Defendant officers' actions in stopping Plaintiff were based on specific and articulable facts which created a reasonable suspicion of criminal activity. An informant's tip alone may provide reasonable suspicion for an investigatory stop so long as there is a "sufficient indicia of reliability to warrant reasonable, articulable suspicion of criminal activity." *Bazzi v. City of Dearborn*, 658 F.3d 598, 604 (6th Cir. 2011) (internal quotations and citations omitted). "[A]n informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of [the informant's] report." *Id.* at 605 (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)). These "closely intertwined issues" bear upon the totality of the circumstances that determine whether reasonable suspicion existed to believe that Plaintiff possessed a stolen debit card. *Id*.; *see Alabama v. White*, 496 U.S. 325, 328–30 (1990) (applying factors to anonymous tip in the reasonable-

suspicion context); *United States v. Johnson*, 620 F.3d 685, 696 (6th Cir. 2010) (concluding that 911 call did not provide reasonable suspicion because it failed to make any "specific allegation" of criminal activity or provide "predictive information" about the suspects).

Here, Defendant officers interrogated Plaintiff in response to a phone call from an LVNA employee that an individual possessed a stolen debit card. Although Plaintiff challenges the reliability of the POS database, Defendant officers were in no position to question the reliability of LVNA's POS system. From the perspective of the officers, Defendant Vitosevic, Defendant Barrager, and any other LVNA employee(s) involved in reporting the incident, were the most trustworthy and knowledgeable individuals regarding the reliability of the POS system and they had a duty to investigate.

Therefore, the only remaining question is whether the officers' "conduct in this case was such as to place the seizure within the general rule requiring probable cause for a seizure or within *Terry*'s exception to that rule." *United States v. Place*, 462 U.S. 696, 707-08 (1983). In other words, whether the parameters of the seizure constitute an arrest or an investigatory detention.

### ii.   Defendant officers conducted a *Terry* stop, not an arrest.

With regard to the second inquiry, based upon the facts plead, "'the degree of intrusion into the suspect's personal security' was reasonably related to the character of the reasonable suspicion," *Powell*, 210 F.3d

12

373 at *3 (6th Cir. 2000) (table) (quoting *Garza*, 10 F.3d at 1245), and thus constituted a *Terry* stop.

"While this analysis, like the first prong, is necessarily fact-intensive, we nevertheless are guided by the duration of the stop and the nature any other restraints placed on an individual's liberty." *Id.* Courts have relied on a totality of factors in distinguishing between temporary detainment or arrest including, whether the "brevity of the invasion of [an] individual's Fourth Amendment interests . . . is so minimally intrusive as to be justifiable on reasonable suspicion." *United States v. Place*, 462 U.S. 696 (1983).

For example, an investigative *Terry* stop may indeed ripen into an arrest through the passage of time or the use of force. *See United States v. Sharpe,* 470 U.S. 675, 685–86 (1985); *Royer,* 460 U.S. at 500 (police exceeded limits of an investigative stop where police retained the suspect's personal property and identification, relocated him to an investigation room, and failed to inform the suspect he was free to leave); *United States v. Saari*, 272 F3d 804, 808 (6th Cir. 2001) (internal citations omitted) (The "threatening presence of several officers, . . . some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled" may indicate an arrest has occurred.). Where officers exceed the permissible scope of a *Terry* stop, a suspect is considered "under arrest" for Fourth Amendment purposes, (*Royer*, 460 U.S. 491),

and the continued detention of the suspect must be based upon probable cause. *United States v. Avery,* 137 F.3d 343, 349 (6th Cir.1997).

According to Plaintiff, Defendant officers exceeded the permissible scope of an investigation based upon reasonable suspicion and therefore, their conduct constituted an arrest. First, Plaintiff points out that she was forced to remain in the store for approximately 43 minutes—a duration not warranted by a *Terry* stop—while Defendant officers attempted to determine whether she was in possession of a stolen debit card. Second, Plaintiff asserts that a reasonable person in her situation would have believed themselves to be under arrest based on her interaction with the Defendant officers. Not only did officers deny her request to leave the store and take her license and debit card, one of the officers also "forcefully" grabbed her phone from her hand twice while she attempted to speak with the bank representative. Third, Plaintiff alleges that one of the officers threatened to arrest her and take her to the Troy Police Department if he could not get in touch with anyone. Lastly, Plaintiff points to the fact that the officers not only seized her license and debit card but maintained possession of her debit card when they left.

### a.   The duration of the investigatory stop

Although the extended duration of an investigatory detention is a factor to consider in determining whether authorities exceeded the scope of a *Terry* stop, *United States v. Place* 462 U.S. 696 (1983), the Sixth Circuit has clearly established [t]here is no rigid time limit for a *Terry*

stop," and when the police's "initial queries do not dispel the suspicion that warranted the stop, further detention and questioning are appropriate." *Phillips v. Blair*, 786 F. App'x 519, 526 (6th Cir. 2019) (quoting *Houston v. Clark Cty. Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999)). The Sixth Circuit has been reluctant to second-guess the actions of officers acting in "swiftly developing situation[s]." *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).

In *United States v. Place*, the Supreme Court concluded that the Government had exceeded the scope of a *Terry* stop based upon two primary factors: the seizure of the suspect's luggage, or the intrusion of his possessory and liberty interest; and (2) the length of the seizure of the suspect's luggage.

Although the Court noted that in some cases the seizure of property is less intrusive than the seizure of the person, the Court emphasized that when the government seized the suspect's luggage while at the airport, the suspect was essentially restrained from leaving the airport. Specifically, the Court noted that in situations where: "the authorities do not make it absolutely clear how they plan to reunite the suspect and his possessions at some future time and place, seizure of the object is tantamount to seizure of the person. This is because that person must either remain on the scene or else seemingly surrender his effects permanently to the police." *Id.* at 708 n.8 (quoting 3 W. LaFave, Search and Seizure § 9.6, p. 61 (1982 Supp.).

15

Although "brief investigatory detentions rising to the level of a seizure are constitutionally permissible if supported by a reasonable and articulable suspicion that the person was engaged in criminal activity," *United States v. Knox*, 839 F.2d 285 (6th Cir. 1988) (internal quotations and citations omitted), in *Place*, the Court determined that reasonable suspicion *did not* warrant the 90-minute period in which the government detained the suspect's luggage, and by proxy detained him, constituting an arrest. Among other things, the Court noted that the government agents could have minimized the intrusion upon the suspect's Fourth Amendment interests by allowing him to complete the rest of his flight and waiting to investigate the contents of his luggage upon his arrival to LaGuardia Airport. The agents also failed to inform the suspect as to where they were transporting his luggage and for how long.

Plaintiff contends that similar to the agents in *Place*, Defendant officers could have minimized their intrusion upon her Fourth Amendment rights but failed to do so. However, the facts in the present case are readily distinguishable. At the time Defendant officers questioned Plaintiff, she was on the phone with a bank representative for assistance. Plaintiff contends that officers could have quickly dispelled their suspicions in a short period of time by talking to her bank representative. Instead, the officers, told her she was not free to leave and took her driver's license and debit card to the rear of the store. Using Plaintiff's logic, Defendant officers would have had to use Plaintiff's

16

phone and also verify that the caller on Plaintiff's phone was indeed a bank representative.

Instead, in the midst of a swiftly developing situation, Defendant officers decided it was more efficient and credible to scan Plaintiff's card and verify her identification. Unfortunately, Defendant officers were unable to verify whether the card was stolen because there was no name attached to the card. Then, *at Plaintiff's request*, one of the officers attempted to call the number on the back of the card to speak with a bank representative himself. With 18 callers ahead of him, he decided it was best to confiscate the debit card and permit Plaintiff to leave.

Under the circumstances it appears that the duration of the investigation was necessary to assess the validity of the employee's report that the card had been stolen and check into Plaintiff's explanations as to why it was not. Once the officers realized they would not be able to verify Plaintiff's lawful possession of the card within a reasonable period of time, they released her.

### b.   *The nature of the investigatory stop*

To support the claim that she was arrested, Plaintiff cites to *United States v. Morgan*, in which the Sixth Circuit held that the officer's conduct constituted an arrest, and not a *Terry* stop, at the moment police officers surrounded defendant's home. 743 F.2d 1158, 1163 (6th Cir. 1984). In that case, the court rejected the government's argument that it was merely conducting an investigatory stop warranted by reasonable

suspicion, finding that police's show of force and authority indicated that defendant was not free to leave the premises.

Plaintiff argues that similarly, the officers' actions here cannot be characterized as a brief investigatory stop and that:

> "as a practical matter," Plaintiff was under arrest as soon as the officers confronted her in an intimidating way by standing in front of and over her as she sat in a chair and loudly accusing her of using a stolen debit card, and certainly under arrest when they told her she could not leave and forcefully took her identification and debit card."

ECF No. 18, PageID.119.

However, the Court finds the holding in *Morgan* to be inapposite. In *Morgan*, the Sixth Circuit emphasized the heightened privacy rights involved in the warrantless search and seizure of an individual's home. Although the government attempted to distinguish the actual intrusion of the home from the intrusion upon the individual's property, the court was not persuaded. Instead, the court found that surrounding an individual's home and making it impossible for them to escape the premises is the same as an arrest of the individual. Moreover, the officer's conduct exceeded the permissible scope of an investigatory stop based upon reasonable suspicion.

Here, the same heightened privacy concerns are not present. A more comparable set of facts can be found in *Berkemer v. McCarty*, 468 U.S. 420 (1984). There, the Supreme Court held that roadside questioning of a motorist detained pursuant to a routine traffic stop did

not constitute a "custodial interrogation" for purposes of assessing the applicability of *Miranda* rights. The Court acknowledged that a traffic stop was a seizure within the meaning of the Fourth Amendment but distinguished the concept of custody from a traffic stop on the ground that such stops are temporary and brief. The Court reasoned:

> A motorist's expectations, when he sees a policeman's light flashing behind him, are that he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may be given a citation, but that in the end he most likely will be allowed to continue on his way. In this respect, questioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged, and in which the detainee often is aware that questioning will continue until he provides his interrogators the answers they seek.

*Id.* at 437-38. The Court also noted that traffic stops are public and that the presence of witnesses, or "exposure to public view" diminishes the concern for police abuse of authority. *Id.* at 438.

Although the Court's analysis narrowly focuses on *Miranda* rights, the reasoning is applicable here. Plaintiff was detained in the public eye at the Louis Vuitton store and the investigation was limited to an inspection of her debit card, interviewing the store clerks and Plaintiff, and attempting to communicate with the debit card's bank representatives. Although 43 minutes may be a longer detention than expected, in this case it was appropriate given that the officers could not verify the validity of the card through their own inspection and there was

19

an extended wait time to speak to a bank representative. Once the Defendant officers realized they would not be able to corroborate her ownership of the card in a timely manner, they maintained possession of the card and left the store.

Finally, while the Defendant officer's threat to arrest Plaintiff if he could not verify she rightfully owned the debit card was indisputably coercive, it is also evidence that at the time of their interaction, Plaintiff was not under arrest and had reason to know that she was not (yet) under arrest. While the Court can certainly understand and sympathize with a customer's embarrassment, humiliation or resentment from being publicly detained by the police at the checkout counter of a fancy store and accused of debit card fraud, the facts here—even when viewed in the light most favorable to Plaintiff, do not support a finding that she was under arrest.  And the seemingly harsh and even disrespectful treatment by the Troy Police officers, though distasteful and unjustified, cannot cause what the law recognizes as a *Terry* stop to ripen into an arrest.

### c.    *The seizure of personal property*

Plaintiff does not indicate whether the Defendant officer informed her the card would be returned at a later date, but records indicate the Troy Police Department returned Plaintiff's debit card on June 21, 2021, more than two months after it was confiscated. ECF No. 21-3, PageID.202. When Defendant officers confiscated her license and debit card, they made it clear she was not free to leave, but only temporarily.

Therefore, the only question is whether the seizure of her debit card and license was minimally intrusive enough to be justifiable on reasonable suspicion or whether it was excessive enough that it should have been supported by probable cause.

Unlike in *Place*, where agents could have made other arrangements to investigate the suspect's luggage once he made it to his arrival location, if Defendant officers were to have relinquished the card to Plaintiff without verifying its ownership, they ran the risk of unknowingly placing a stolen card back into Plaintiff's possession. At the time, the available evidence consisted of a report of a stolen card based on the store's POS database. Once the officers recognized they could not quickly resolve the matter, they allowed Plaintiff to leave. Admittedly, confiscating Plaintiff's debit card had an impact on Plaintiff's personal liberty and undoubtedly inconvenienced her, but depriving someone of a an apparently defective debit card does not have the same consequential effect as detaining someone's luggage in an airport and derailing their travel itinerary. Plaintiff still had access to her bank account and was aware that she was free to leave, even after the officers walked out of the store with her debit card.

In light of the facts pled, Defendant officers' conduct reasonably related to the scope of an investigation based upon reasonable suspicion of debit card theft. Accordingly, the Court finds it cannot be reasonably

inferred that Plaintiff was arrested for purposes of the Fourth Amendment and Plaintiff's Fourth Amendment claim must be dismissed.

## B. False Arrest or Imprisonment (Count II)

Plaintiff also brings a false arrest claim against all defendants, pursuant to MCL § 600.2907. Michigan has a specific statutory provision to address civil claims for malicious prosecution. Section 600.2907 provides:

> "Every person who shall, **for vexation and trouble or maliciously, cause or procure any other to be arrested**, attached, or in any way proceeded against, by any process or civil or criminal action, or in any other manner prescribed by law, **to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known, shall be liable to the person so arrested, attached or proceeded against,** in treble the amount of the damages and expenses which, by any verdict, shall be found to have been sustained and incurred by him; and shall be liable to the person in whose name such arrest or proceeding was had in the sum of $200.00 damages, and shall be deemed guilty of a misdemeanor, punishable on conviction by imprisonment in the county jail for a term not exceeding 6 months."

[emphases added].

### i. Plaintiff cannot bring an actionable claim under MCL §600.2907.

In *Camaj v. S.S. Kresge Co.*, the Michigan Supreme Court held, "[t]he words 'by any process or criminal action, or in any other manner prescribed by law' logically must be viewed as one phrase modifying the words 'arrested, attached, or in any way proceeded against.'" 426 Mich.

281, 289 (1986). To make proper sense of MCL §600.2907, it must be read as applying only to "[e]very person who shall, for vexation and trouble or maliciously, cause or procure any other to be arrested, attached, or in any proceeded against . . . to answer to the suit or prosecution of any person, without the consent of such person, or where there is no such person known." *Id.* Ultimately, the Court held that §600.2907 is intended *only* to reach those actions in which a party brings a suit against a person who had instituted proceedings against the current plaintiff *in the name of another, without the named person's consent, or where there is no such person known. Id.* at 290 [emphasis added].

Plaintiff argues that MCL §600.2907 applies to more than malicious prosecution claims and is a punitive damage statute which allows for trebling where a common law false arrest claim is maintained. ECF No. 25, PageID.342. But *Camaj* makes it clear that Plaintiff's argument must fail because MCL §600.2907 only addresses malicious prosecution claims. However, Plaintiff contends that even if MCL §600.2907 does not apply, Plaintiff would still be entitled to raise a false arrest claim. *Id.*

Contrary to Defendants LVNA and Vitosevic's assertion that Plaintiff has failed to state an actionable false arrest claim, Plaintiff has met the bare requirement for bringing an action for false arrest against all Defendants. Although Plaintiff cannot bring a false arrest claim under MCL §600.2907, she has alleged she was falsely arrested by Defendants and provided facts that support a viable legal theory. *See Dibrell v. City of Knoxville, Tennessee*, 984 F.3d 1156, 1160 (6th Cir. 2021) (finding

plaintiff's complaint did not need to expressly plead legal theories; it needed to plead factual allegations that impliedly established at least one viable theory); *See also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1219 (2d ed.1990) ("[A] complaint is sufficient against a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), if it appears from the complaint that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely are not appropriate."). Accordingly, in the interest of justice, the Court will liberally construe Plaintiff's allegation as an actionable common law false arrest claim against all defendants.

### ii. Plaintiff pleads a cognizable common law false arrest claim against Defendants LVNA, Vitosevic and Barrager.

The Michigan Supreme Court has stated that a "false arrest or imprisonment is arrest or imprisonment (1) of a person, (2) who is innocent of the charge on which he is arrested or imprisoned, (3) by the defendant or at his instigation, (4) without legal justification." *Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212, 232, 327 N.W. 2d 893 (1982). "A false arrest is an illegal or unjustified arrest, and the guilt or innocence of the person arrested is irrelevant." *Peterson Novelties, Inc. v. City of Berkley*, 259 Mich. App. 1, 18 (2003). To prevail on a claim of false arrest, "a plaintiff must show that the arrest was not legal, i.e., that the arrest was not based on probable cause." *Id.*

But legal justification and the lawfulness of an arrest are not mutually exclusive. Where a "private citizen summons a police officer and

intentionally gives him false information accusing another of a felony and [] the officer, reasonably acting on this false information, arrests the innocent person, the arrest would be [found] lawful," but the citizen may be held liable for instigating the arrest without legal justification. *Lewis,* 415 Mich. 212 at 235. "Therefore, the legality of the arrest is not necessarily a bar to maintaining an action for false arrest or false imprisonment." *Id.*

Under Michigan law, "[t]he elements of false imprisonment are (1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement." *Bletz v. Gribble*, 641 F.3d 743, 758 (6th Cir. 2011) (internal quotation marks omitted) (quoting Walsh v. Taylor, 263 Mich. App. 618, 627 (2004)). "The confinement, however, 'must be "false," i.e., without right or authority to do so.'" *Smith v. Twp. of Prairieville*, 194 F. Supp. 3d 658, 671 (W.D. Mich. 2016) (quoting *Tumbarella v. Kroger Co.,* 85 Mich. App. 482, 489 (1978)).

### a. Defendant officers are entitled to governmental immunity.

Defendant officers argue that Plaintiff's false arrest claim must fail on the merits for failing to state an actionable claim under MCL §600.2907. But, even if this Court finds she has stated an actionable claim for common law false arrest, Defendant officers raise the defense that as police officers acting within the scope of their duties, they are entitled to immunity from tort claims under Michigan law. For the reasons explained, we find that there are no set of facts Plaintiff could possibly plead to survive the officer's immunity defense. Accordingly,

Plaintiff's claim against Defendant officers for common law false arrest must be dismissed.

In *Odom v. Wayne County,* 482 Mich. 459 (2008), the Michigan Supreme Court held that the Governmental Tort Liability Act (GTLA) provided immunity from intentional tort liability, and that the proper test to be applied in determining if a governmental employee enjoys immunity from an intentional tort is found in *Ross v. Consumers Power Co.*, 420 Mich. 567 (1984). Under *Ross*, to take advantage of qualified immunity for intentional torts, a governmental employee must raise governmental immunity as an affirmative defense and must satisfy a three-part test proving:

    a) the acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority;

    b) the acts were undertaken in good faith, or were not undertaken with malice; and

    c) the acts were discretionary, as opposed to ministerial.

*Id.* at 592; *Odom*, 482 Mich. at 480. In this case, the record shows that Defendant officers are entitled to governmental immunity under the *Ross* test as outlined by the Michigan Supreme Court in *Odom*. Elements (a) and (c) are easily met here. As to the former, Defendant officers were indisputably acting during the course of employment as a police officers at the LVNA store and their actions fell within their discretion. Officers arrived at the scene upon receiving a report of a stolen debit card. Subsequently, the officers temporarily detained Plaintiff to investigate whether she was in unlawful possession of the card.

In addition, the officers' actions were discretionary and not ministerial because they acted within reason based upon the suspected criminal activity as already determined. Once the officers determined they could not verify the ownership of the card within a reasonable amount of time, they confiscated the card and left the store

The prong under *Odom* that requires greater analysis is whether Defendant officers' actions were undertaken in good faith or without malice. In reviewing the allegations in the complaint and the available record, the Court concludes that both officers acted in good faith and without malice. *See Odom*, 482 Mich. at 474.

In *Odom*, the Michigan Supreme Court discussed this element at length, defining lack of good faith "as malicious intent, capricious action or corrupt conduct." *Id.* (citations omitted). Furthermore, "willful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id.* (citations omitted). Good faith "is subjective in nature" and "protects a defendant's honest belief and good-faith conduct with the cloak of immunity." *Id.* at 481-82.

Although Plaintiff challenges the presence of good faith, contending that malice in a false arrest claim can be inferred from the absence of probable cause, *Pauley v Hall*, 124 Mich. App. 255, 265-66 (1983), this argument is unpersuasive. In *Pauley*, the court held that malice could be inferred by a lack of probable cause in a malicious prosecution claim. Plaintiff does not cite to case law indicating that the same holding can be

extended to false arrest claims. Moreover, here, as noted above, the officers had reasonable suspicion to justify a short detention, and they did not make an arrest without probable cause.

Taking Plaintiff's facts as true, the Court concludes that the Defendant officers acted in good faith and without malice; and within the scope of their duties as police officers when they arrived at the scene to investigate the reportedly stolen debit card. Accordingly, Defendant officers are entitled to governmental immunity and Plaintiff's claims against them must therefore be dismissed.

### b. Plaintiff cannot plausibly plead a false arrest or imprisonment claim against Defendants LVNA, Vitosevic and Barrager.

To be liable for false imprisonment, a private actor must instigate or participate in an unlawful arrest or imprisonment. *Lewis*, 415 Mich. 212, 218-19. Furnishing information to authorities regarding a belief that criminal activity has occurred is not sufficient to sustain a claim of false imprisonment or arrest if the authorities instituting the arrest acted on their own judgment and discretion. *Id*.

Plaintiff argues that Defendants LVNA, Vitosevic, and/or Barrager instigated a false imprisonment by falsely reporting Plaintiff's debit card as stolen. ECF No. 1, PageID.10, at ¶53-54. Defendants LVNA and Vitosevic have failed to challenge the merits of Plaintiff's claim, contending that Plaintiff has failed to articulate an actionable claim of false arrest under the statute, but as discussed, the Court finds Plaintiff has met the minimum pleading requirements under common law. First, Plaintiff alleges she was arrested or imprisoned when she was forced to

remain in the store when the officers investigated the reported theft. Second, she alleges that she was innocent of any suspected criminal activity. Third, she claims Defendant Vitosevic and her supervisor Barrager instigated the arrest by calling Troy Police and Somerset Security. Fourth, Plaintiff maintains that Defendant Vitosevic and Barrager falsely reported that the POS system indicated the card was stolen.

Michigan law recognizes the possibility that a person who instigates, rather than actually physically commits, an act of false imprisonment can in certain circumstances be held liable for the tort of false imprisonment. *Handlon v. Rite Aid Servs., LLC*, 513 Fed. Appx. 523 (6th Cir. 2013), is instructive on this point. In *Handlon*, the Sixth Circuit affirmed summary judgment in favor of an employer on a false imprisonment claim by a former employee, who had alleged that a manager had provided the police with false information leading to her arrest. Noting that the manager could only be held liable for the arrest if the arresting officer "acted at [the manager's] direction and not through an exercise of [the officer's] own judgment," *id.* at 530, the court summarized Michigan law on the issue as follows:

> In [*Lewis v. Farmer Jack Div., Inc.*, 415 Mich. 212, 327 N.W.2d 89, 894–95 (1982)], the Michigan Supreme Court focused on the degree of direction a private citizen exercises over an official arrest: "It is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it, so long as he leaves to the police the decision as to what shall be done about any arrest, without persuading or influencing them." *Lewis,* 327 N.W.2d at 895 n. 3 (quoting Restatement (Second) of Torts, § 45A cmt. c). The court held

29

that, where a store employee contacted police to report that she identified the man responsible for a previous robbery and the man was arrested based on the information the employee provided, "[t]he police acted on and in the exercise of their own judgment and not at the direction of [the employee] or the manager." *Id.* at 895. The court further noted that the employee "communicated facts and circumstances to the officer, her perception that Lewis was the robber. The officer was left to act on his own judgment and evidently acted on his own judgment in arresting Lewis." *Id.* at 895 n. 3. In contrast, the Michigan Supreme Court held in *Maliniemi v. Gronlund,* 92 Mich. 222, 52 N.W. 627, 627–28 (1892), that an officer acted upon the judgment of a private citizen where the citizen directed the officer to an individual matching the description of a suspect and the plaintiff was arrested immediately without verifying his identity in any way.

*Handlon*, 513 Fed. Appx. at 530.

In applying the "'judgment and direction' analysis suggested by *Gronlund* and *Lewis*," the Sixth Circuit in *Handlon* held that no reasonable jury could find for the plaintiff, because the evidence showed that the police officer arrested the plaintiff based on the manager's communication to the officer of "'facts and circumstances' and his 'perception' that [the employee] was responsible" for the theft for which she was then arrested. *Id.* The court concluded that the plaintiff could "point [] to no evidence in the record that [the manager] commanded the officer to arrest [the plaintiff], or that she was arrested simply at [the manager's] request, rather than upon a weighing of his statements. These facts are similar to the facts in *Lewis* and support the same result." *Id.* at 530-31.

30

The same principles apply here. Regardless of whether Plaintiff could be considered arrested or confined as defined under Michigan law, Plaintiff cannot plausibly plead facts that would allow this Court to reasonably infer Defendants Vitosevic, Barrager, or any other LVNA employee instigated a false arrest against her. It is not enough that an employee wrongfully reported the allegedly stolen credit card to the police. Nor is it sufficient simply because the employee knows that the information is false.  There is no evidence here that employees directed the officers to arrest Plaintiff, and they acted upon their command without exercising independent judgment. Notably, this Court finds that Plaintiff was not arrested. Rather, upon receiving the report, the officers investigated the situation and determined the appropriate response was to confiscate the debit card until they could determine the lawfulness of Plaintiff's possession. Accordingly, Plaintiff's false arrest and imprisonment claim against Defendants LVNA, Vitosevic, and Barrager is dismissed.

## C. Public Accommodation (Count III)

Michigan's civil rights statute provides that "a person shall not deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation because of race." Mich. Comp. Laws § 37.2302(a). A place of public accommodation includes "a business…. whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available

to the public." Mich. Comp. Laws § 37.2301(a). Defendant LVNA, as a retail business is a place of public accommodation as defined by the statute.

In order to state a public accommodations claim under MCL § 37.2302(a), a plaintiff must establish four elements: (1) discrimination based on a protected characteristic (2) by a person, (3) resulting in the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations (4) of a place of public accommodation. *Haynes v. Neshewat*, 477 Mich. 29, 35, 729 N.W. 2d 488 (2007). Defendants LVNA and Vitosevic contend that Plaintiff has failed to properly plead that she was discriminated against on the basis of race. Therefore, the Court will address and review the pleading requirements for racial discrimination.

A plaintiff claiming discrimination need not establish a prima facie case under *McDonnell Douglas* to survive a motion to dismiss. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). The ordinary rules of evidence for assessing the sufficiency of a complaint apply. *Id*. (citing to *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)) (holding that "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"). The precise requirements of a prima facie case can vary depending on the context and were "never intended to be rigid, mechanized, or ritualistic." *Id*. at 512. Rule 8(a)'s simplified pleading standard applies to all civil actions, where

a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Id*. at 513 – 514.

Although the Complaint need not present "detailed factual allegations," it must allege sufficient "factual content" from which a court, informed by its "judicial experience and common sense," could "draw the reasonable inference," that Defendant discriminated against Plaintiff with respect to denying her access to a place of public accommodation because of her race. *Keys v. Humana,* 684 F. 3d 605, 610 (6th Cir. 2012) (upholding the requirements of *Swierkiewicz* in light of *Twombly* and *Iqbal).*

To prove race discrimination, a plaintiff may prove either intentional discrimination or disparate treatment by the defendant. *Sanders v. Southwest Airlines Co*., 86 F. Supp. 2d 739, 744 (E.D. Mich. 2000). Intentional discrimination may be proved by showing that the plaintiff is a member of a protected class, that the decision-maker had a predisposition to discriminate against members of the protected class, and the decision-maker acted on that pre-disposition. *Id*. Disparate treatment may be proved by showing that the plaintiff is a member of a protected class and was treated differently than persons of a different class for the same or similar conduct. *Id*. Plaintiff has alleged disparate treatment discrimination by Defendants by claiming that Defendants did not report stolen debit/credit cards for similarly situated white patrons'

33

when their cards were declined.  ECF No. 1, PageID.5, ¶5. However, "a complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009). Instead, there must be some evidence that similarly situated white patrons were not reported to the police when their cards were declined. Plaintiffs' current Complaint alleges facts that are insufficient to cross the threshold of plausibility to establish a claim of disparate treatment discrimination.

However, "[a]s an alternative to showing disparate treatment, in the commercial establishment context, the *Sixth* Circuit has held that a plaintiff can establish a prima facie case of discrimination by showing that they received service in a "markedly hostile manner . . . [that] a reasonable person would find objectively discriminatory." *Keck v. Graham Hotel Systems, Inc.,* 566 F.3d 634, 641 (6th Cir. 2009) (citing to *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001). This test has been adopted to allow a plaintiff "to state a claim when similarly situated persons are not available for comparison, as will often be the case in the commercial establishment context." *Christian,* 252 F.3d at 873.

The three-prong test articulated in *Christian* requires a plaintiff to prove:

(1) plaintiff is a member of a protected class;

(2) plaintiff sought to make or enforce a contract for services ordinarily provided by the defendant; and

(3) plaintiff was denied the right to enter into or enjoy the benefits or privileges of the contractual relationship in that: (a) plaintiff was deprived of services while similarly situated persons outside the protected class were not and/or (b) plaintiff received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.

*Id.* at 872.

In determining whether a defendant's actions rise to the level of being markedly hostile, courts consider whether the conduct is "(1) so profoundly contrary to the manifest financial interests of the merchant and/or their employees; (2) so far outside of widely-accepted business norms; and (3) so arbitrary on its face, that the conduct supports a rational inference of discrimination." *Keck,* 566 F. 3d at 641 (quoting *Christian*, 252 F.3d at 871) (internal citations and quotations omitted)).

An employee's decision to report a shoplifting incident to the police which did not in fact occur raises a material issue of fact as to whether that behavior may be characterized as hostile and objectively discriminatory. *Christian*, 252 F.3d at 878. In *Christian*, the Plaintiff, an African-American woman, and her white friend were Christmas shopping at defendant's store while being surveyed by defendant's employee. *Id.* at 867. When defendant's employee incorrectly believed

that plaintiff had placed an item in her purse, defendant's employee reported plaintiff's alleged shoplifting to the police. *Id.* In applying the markedly hostile analysis, the court held that plaintiff had sufficiently pled a claim of discrimination and reversed the district court's ruling in defendant's favor.

Applying *Christian* to the case at bar, it appears that Plaintiff has pled sufficient facts to state a claim of public accommodation discrimination. The first two prongs of *Christian* are easily met. First, as an African-American, Plaintiff is a member of a protected class. Second, "we have no trouble concluding that Plaintiff made herself available to enter into a contractual relationship for services ordinarily provided" by LVNA: the record reflects that she sought to purchase goods from Defendant LVNA's store and may have been able to do so had police officers not prevented her from resolving her debit card issue with her bank representative. *Christian*, 252 F.3d at 874. Third, reading the facts in the light most favorable to Plaintiff, we find it reasonable to infer that Plaintiff received services in a markedly hostile manner.

Plaintiff's allegations raise a genuine issue of material fact as to whether Defendant's POS system did in fact flag Plaintiff's debit card as stolen. If Defendant's POS system did *not* show a prompt indicating that the card was stolen, but merely declined, it would be "profoundly contrary" to LVNA's financial interests to report a customer for debit or credit-card fraud. It is not uncommon for transactions to be declined or

for banks to place a temporary hold on a debit card as a security measure when large purchases are attempted. And if it is not common practice at LVNA to report all cards that are declined as stolen, it would be reasonable to infer discriminatory intent when such a report is made against an African-American woman. Notably, Defendants LVNA and Vitosevic have failed to offer any evidence that their POS system is capable of detecting stolen debit cards. As the sole basis for contacting security and/or police, the actions of Defendants Vitosevic and LVNA could be viewed objectively discriminatory if Plaintiff's allegations are accepted as true.

Therefore, accepting Plaintiff's version of the facts, this Court is persuaded that Plaintiff has pled sufficient facts to support a claim of public accommodation discrimination in violation of MCL §32.2302(a), and at the very least discovery is proper to resolve a pertinent factual dispute.

## V.   CONCLUSION

For the foregoing reasons, Defendant Shearer and Minton's Motion to Dismiss (ECF No. 13) is **GRANTED.**  The claims against them are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED**, Defendant LVNA and Vitosevic's Motion to Dismiss (ECF No. 23) is **GRANTED IN PART as to Count II and DENIED IN PART, as to Count III.**

37

**IT IS FURTHER ORDERED**, Plaintiff's Motion to Amend (ECF No. 19) is **GRANTED**.

**IT IS SO ORDERED.**

Dated:  March 31, 2022       s/Terrence G. Berg
                             TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE